# CIRCUIT COURT OF LOUDOUN COUNTY

Gene Mock
and Monica Mock

v.

Mark E. Boczar, Sr.,
t/a Boczar Masonry

March 19, 2004

Case No. (Law) 28396

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court for trial without a jury on October 1, 2003, and January 21 and 22, 2004, on claims by the Plaintiffs, Gene Mock and Monica Mock, against the Defendant, Mark E. Boczar, Sr., t/a Boczar Masonry, for fraud in the inducement, actual fraud, constructive fraud (in the alternative), violation of the Virginia Consumer Protection Act (VCPA), and breach of contract.

After consideration of the evidence presented, the Plaintiffs' Post-Trial Brief, and Defendant's Summation, I find as follows.

1. Boczar is not liable for fraud in the inducement, actual fraud, constructive fraud, or a violation of the VCPA.

2. Boczar did breach the contract for masonry work, and damages for such breach in the amount of $11,000.00 are awarded to the Mocks.

*Fraud Claims*

The first four counts of the motion for judgment all concern the Mocks' claim that Boczar defrauded them by misrepresenting that he was a licensed contractor.

In April 2000, Boczar and the Mocks entered into a contract for certain masonry and brickwork to be completed on a house being constructed by the Mocks in Loudoun County. The contract price was $59,643.00. Hence, under the provisions of Va. Code § 54.1-1100, *et seq.*, Boczar was required to be licensed as a Class B contractor to engage in the Mocks' construction project.

At least twice before the contract was signed, the Mocks asked Boczar if he was a licensed contractor. Boczar replied that he was "licensed." After Boczar started his work in September 2000, he again, in response to their inquiry, told the Mocks that he was "licensed."

Although Boczar had taken and passed the Class B exam in 1994, he did not actually receive a Class B license from the Virginia Department of Professional and Occupational Regulation (VDPOR) until October 12, 2000. He never advised the Mocks that he had received the license.

The Mocks testified that it was important to them that Boczar was a licensed contractor. They testified that they would never have entered into the contract if they had known that he was not licensed. Boczar testified that he thought that the Mocks were asking if he had a Loudoun County business license, which he did have when the contract was entered into and when he did the work.

Fraud must be proven by clear and convincing evidence. The trier of fact must have a firm conviction that fraud has been shown. It is a heavier burden than a mere preponderance of the evidence.

I do not think that the Mocks have proven the alleged fraud by clear and convincing evidence. The Mocks did not contract with Boczar solely because he said he was licensed. Boczar was one of three masonry contractors referred to the Mocks by a brick supplier. The Mocks had extensive discussions with Boczar before the contract was signed. They discussed the plans for the house and what Boczar was to do. As important as the licensure allegedly was to the Mocks, they never asked Boczar for a copy of his license. They never insisted on seeing the license before the contract was signed.

Even further, the failure of Boczar to have a Class B contractor's license did not cause the Mocks any damage. The damage came from how Boczar performed the contract. The Mocks offered no evidence that Boczar's lack of a Class B contractor's license contributed to the breach of contract. This is not a case where Boczar undertook to do something that he was unable to do. He had passed the required exam for a Class B contractor's license. He was eligible to get the license, but had just not paid the fee and taken the other steps necessary to get the license.

Contracting with a person who was eligible to have, but who did not have, a Class B contractor's license did not cause damage to the Mocks. Their reliance on Boczar's saying he was licensed did not work to their detriment. It is not a "but for" situation. The Mocks cannot look at it in hindsight and say, but for Boczar's misrepresentation as to his license status, they would never have been damaged. The Mocks' damages arose from the way that the contract was performed by Boczar, not by his misrepresentation as to his license status.

I find no fraud in the inducement, no actual or constructive fraud, and accordingly, no violation of the VCPA.

*Breach of Contract Claim*

The Mocks assert that Boczar breached the contract as to (1) the front and back stairs, (2) the basement window sills, and (3) the four-inch block wall in the garage area.

Clearly, the front and back stairs were not "completed in a workmanlike manner according to standard practices" as required by the contract. They did not meet the County building code requirements because the greatest riser height exceeds the smallest by over
3/8-inch. Boczar constructed the steps. He is charged with knowledge of the requirements of the building code.

The Mocks take the position that Boczar constructed the steps and that the building code places the responsibility for correct construction on the person who does the work. Boczar offered evidence that Mr. Mock was aware of the problem, but nevertheless instructed Boczar to construct the steps with the riser problems. The Mocks' evidence is that they never told Boczar to do anything that would not meet the code requirements.

The Mocks did not hire a general contractor. They arranged for various contractors to come in and do various parts of the job. Boczar was hired to do masonry and brick work. The Mocks' evidence was that they merely hired the various contractors and expected them to do the job for which they were hired. They denied doing any day-to-day supervision. Boczar's evidence was to the contrary. He offered evidence that Mr. Mock was on site almost every day and discussed many aspects of the job with the contractors.

The Mocks were spending a considerable amount of money on their new house. It is not a small house. They call it their "dream home." I find it difficult to believe that the Mocks would stand idly by after hiring a contractor to do work on their "dream home" and let the contractor do the work without interaction. It seems more logical that they would have been closely involved in the construction.

I find that the Mocks were aware that there was a potential problem with the stairs' riser heights, but that they thought that it only "skirted" the code. Boczar never told them, even though he was the one with the expertise, that the stairs would not pass code. I think that the Mocks knew there might be a problem after an additional footer had to be laid, but they did not know that the steps as constructed by Boczar would not pass code. The ultimate responsibility for the stairs passing code falls on the one who does the work, Boczar. It is a safety issue, not a mere cosmetic issue. A contractor who should know that what he is constructing will not pass code should not be able to avoid liability for the defective construction by saying that the owner told him to do it that way unless it is proven that the owner knew or should have known that the construction would not pass code. I cannot find from the evidence that the Mocks knew, or even should have known, that the steps would not pass code.

The Mocks' damage for the defective stairs is the cost to replace them. Based on the testimony of Joseph Bane, the Mocks' expert, I find the cost to replace to be $5,500.00 per set of stairs or a total of $11,000.00.

As to the basement window sills, I find that the Mocks agreed to the way that the brick was laid under the windows after it was explained to them that the windows were not installed as called for in the plans. The windows had a piece of wood on the bottom of them that prevented the brick from extending all the way back under them. This was explained to Mr. Mock by Boczar and one of his bricklayers, James Burress, and Mr. Mock agreed to use sill extensions. I do not find this work to be defective. The sill extensions are permissible under the building code.

As to the four-inch block wall in the garage, I find it very hard to believe that Boczar would have deliberately not constructed a block wall shown on the plans without getting the Mocks' approval first. Yet that is exactly what the Mocks want me to believe. I find that the Mocks agreed to delete the block wall and use angle irons and larger size framing to support the brick veneer. I also find from the evidence that, because of the way the framing was installed where the garage connected to the house, placing the block wall where it is shown on the plans would have been useless. It would not have been in a position to support the brick veneer.

The Mocks paid an invoice in January 2001 that contained a charge for angle irons for the garage. If they did not agree to removing the block wall, which triggered the purchase of angle irons, then they would have balked at paying the invoice. But they did not. Also, it must have been obvious to the Mocks that the block wall was never constructed. They were aware of the block wall on the plans because Mr. Mock testified that he called the architect early on to clarify what materials were needed for the block wall.

The block wall only became an issue when water started to appear in the garage. Boczar's expert, George Semples, a Class A licensed contractor, offered a plausible explanation that the water is coming in due to the roof construction. Further, the evidence is conflicting as to whether the use of the angle irons as done by Boczar is improper.

Boczar did not breach the contract in failing to construct the block wall in the garage.